Excuse me, Judge Murguia. It's Blanca. We're having a technical issue. Richard will be right back. Okay, so we'll hold on just for a second. Thank you. Okay, so we'll hold on just for a second. Thank you. Okay, both counsel Mr. Handy and Mr. Coladel, can you hear me and see each other? Yes, I can as well. Excellent, thank you very much. Judge, we're ready to go for the next case. Okay, thank you very much. The last case that's being heard today is the case of Daniel Lopez v. Catalina Channel Express. We're ready to proceed. Good afternoon, your honors. My name is Russell Handy. I represent the plaintiff and the appellant in this case. If you may please the court, I'd like to reserve five minutes of rebuttal time. The issue before the court is, will be if the court decides the substantive issue, is a matter of first impression. And that's whether or not, or how do we apply the burden shifting obligations to a Title III ADA barrier case. That question has not been answered previously. It's begging for an answer from the Ninth Circuit. Numerous courts, I think now 60, have noted that the Ninth Circuit has yet to weigh in on this. And there's a split among the district courts within the Ninth Circuit. A lot of the courts have been borrowing an employment shifting burden context. And I think it makes a lot of sense if it's done properly. And here's why. The definition, the statutory definition of readily achievable, is almost word for word, identical to the statutory definition of undue hardship that's found in the employment context. I mean, it's obviously and expressly borrowed from there, and we have a long history with that kind of burden shifting. And so I can see why judges have borrowed that and tried to make it work in a barrier case. And I think there's some merit to that, but I think it has to be done properly. And let me explain. The big difference, the critical distinction between a barrier case and a reasonable accommodation in an employment setting, is that in the employment setting, when a person with a disability goes to their employer and they ask for a reasonable accommodation, they have this obligation to say, I have a disability. Certain things are affecting me in my workplace. I need you to do something for me. I need a special accommodation to enable me to do my job. And then that springs, then the duty then comes to life where the employer must then engage in an interactive, good faith dialogue and help them work towards a solution. That's not true in a barrier case. In a barrier case, the business has the obligation to assess its facilities and remove barriers. Whether or not a person with a disability ever asks, whether they ever step foot into their facilities, it's been on the books for 30 years, and it's what the DOJ calls... Let me ask you, Mr. Handy, you recognize that we don't have a circuit law on this subject here, but I guess most courts, district courts, have been following Colorado Claw Cross, the 10th Circuit case. And it looks like there's other circuits who have joined that approach, the 2nd, 8th, and 11th Circuit. So I'm trying to figure out why should we go a different path or create a circuit split from four of our sister circuit courts here and following the framework that I think you are ultimately advocating, and that's putting the initial burden on the defendant. There's two reasons. First of all, the 9th Circuit has expressly rejected Colorado Cross. Remember, Colorado Cross was the historical defense under the readily achievable. It dealt with the threat to this... Are you talking about Molesky? Molesky v. Foley Estates, yes. But that is clearly a historical monument case, or dealing with a historical building. And so was Colorado Cross, Your Honor. Well, Molesky specifically dealt with... I'm looking at Molesky. It seems like placing the initial burden on proving that removing a barrier is readily achievable on the defendant when you have a historically significant building, I think can make sense because of the nature of the information at hand there. But isn't it true that most of the district courts in the 9th Circuit have concluded that Molesky only applies to historical buildings? We're not dealing with a historical type of entity here, are we? We're not, but that's my point, is that most of the courts that have cited to Colorado Cross, Colorado Cross was a historic defense case, and the 9th Circuit expressly rejected its analysis. And that's why we shouldn't follow Colorado Cross, because this court's already rejected Colorado Cross. And so Colorado Cross was dealing with historic defense, and Molesky was dealing with historic defense, and they said, we're not going to follow the rationale and the thinking and the conclusions of Colorado Cross. So the 9th Circuit has already spoken on that issue. Sorry, someone was... I'm interrupting Judge McGee, I'm sorry. Go ahead. No, no, I didn't have a question. Go ahead. What has to be pleaded before the district court, in your opinion? I think that the prima facie case for a plaintiff, the burden the plaintiff has... So the plaintiff says, I'm disabled. Yes, I'm disabled. I can't get into the bathroom because the way this door is hung. The door is a barrier. I want money. That's correct. I'm a person with a disability. I encounter a condition that does not meet the ADA standards. It's a barrier to access. Here's the date that I was there. Here's what I was there for. I have standing to seek conjunctive relief because I'm likely to... So therefore it's a barrier. Right. You don't have to say anything about readily achievable. No, I don't believe so. I think the statute says you don't. Now, if you were to have that obligation, what else would you plead? Yeah, that's a difficulty because the factors are the expense and the resources of the financial institution, the overall resources of the facilities involved, the number of persons employed at the facility, the overall size of the business of the covered entity, the impact on the composition of the workforce. None of these things do a plaintiff have in the beginning. Wouldn't it be appropriate to have at least some burden on the part of the plaintiff before the defendant is required to spend all the money to make these analyses and hire the experts and the like? I don't think so, and here's why. They already have that obligation. They already have the obligation to remove barriers at their facilities. It's been on the books for 30 years. Counsel, you may point in your briefing, and of course when you come to the ferries, that doesn't hold up. But it just seems to me you're biting off a lot more than you need to. Rather than biting off this circuit split, I'm curious about why, if Colorado Cross has been adopted widely, you can make some really good points about the kinds of factors that have to be weighed ultimately, and that that's information that's beyond the availability of plaintiffs. But going back to Judge Hellerstein's point, it seems to me if we apply Colorado Cross in a way so that plaintiff's initial burden is not nothing, but it wouldn't be very heavy. It seems to me that plaintiffs need to at least be able to explain what the disability is, and what needs to be accommodated. Is it a countertop height, or what is it? I just wonder if this is a function of degree rather than throwing out the baby with the bathwater. I completely agree. Our position is that the plaintiff does have these initial burdens. They have to establish constitutional statutory standing by talking about their disability and what they've encountered, and how it falls short of the standards. Identify how it falls short of the standards. In response to Judge Hellerstein's question, maybe I misunderstood you, but this is why I interjected. In response to Judge Hellerstein's question, I think you said the plaintiff has no initial burden, and that strikes me as wrong. If the plaintiff, what you're saying now, strikes me as pretty reconcilable with Colorado Cross, maybe just sort of a shade of gray difference. Do you want to speak to that point? What should plaintiffs have to show? Yes, let's speak to that point. The dissent in Colorado Cross highlighted this, and this is what the Ninth Circuit actually cited and quoted and agreed with. They said if a plaintiff has to come up with plans and cost estimates and diagrams and all these things, it's going to be an incredible impediment to a plaintiff being able to challenge these things. We're just saying they shouldn't have to get involved in the readily achievable factors, which are all heavily business-oriented. It's their world. What a plaintiff should have to do is identify their disability, identify their encounter with a noncompliant condition, explain what the condition is in order to get fair notice under Rule 8, and then also identify why they have standing to get those barriers removed. In other words, they're likely to return, or they have a continuing deterrence or something. That's in a crime aphasia case. How about one extra point that removal of the barrier is readily achievable, with some backup to make it plausible? For example, requiring the plaintiff to have some kind of an expert that says something about this before the burden shifts completely. Well, I don't think that that should be the case for two reasons. First of all, the number one factor is really a cost-benefit factor, and the primary factors, if you look at it, if you look at the statutory definition, I'm not talking about the ultimate burden of persuasion. I'm talking about something else that has to be added to warrant the case being in court. Otherwise, it becomes, if used in improper hands, it's a blackmail situation. I'm not saying it's yours, but I've seen a lot of that, too. Here's the situation, Judge. A business has this duty that they've had for 30 years. They have to look at their facilities and see whether or not they present architectural barriers. Then they make a decision that we can or can't remove them. They've already done the analysis. If they're complying with the law, they've already said, yeah, we understand we don't have a ramp, but here's our reasons why. They've already made that decision. So a plaintiff saying, hey, you don't have a ramp, and this is discriminatory, the business should be in a position already to say, yeah, here's our reasons why. It's already on their plate, so to speak. So for forcing a plaintiff to go and try to get drawings or hire an expert even, not even to be able to bring a case without having an expert back up from the beginning, it just seems to me that it's fair to put this on the business who already has the obligation. So you acknowledge you didn't do that here? That's correct. You acknowledge. So your whole argument rises and falls on this initial burden. Well, no, because our whole argument is about burden. You didn't do a lot. If we do apply the Colorado clause, it seems like there was a lot here that was missing. And I guess I just want to make sure. I mean, what you're advocating I understand in terms of the pleading stage, you know, but we're at motion for summary judgment, and it seems like if there is, you know, an application of Colorado clause, and just assume for me for a moment that there is, I guess I want to know how you think you have presented sufficient evidence here. Yes, Your Honor, and here's why I think we have, and also it highlights why this is so important. So the only barrier at issue here is a restroom door that doesn't open. It only opens to 26 inches. It's precluded from opening the entire way. The door pocket is wide enough. The door itself just can't open those last few inches. We say it's because of a metal pin that blocks it from opening. So we have our expert, I mean, our investigator said it can open all the way. It doesn't open all the way because of a metal pin. You just remove that pin, and you're good. They come back and say, well, actually, it's the door handle, but then they provide all this information about center of gravity. But the four factors are the nature and cost of the removal, the overall financial resources of the facility, which you have discovery. You could have gotten that. I'm not quite sure why it didn't look like you maybe attempted to even get that. The overall financial resources of the defendant and the type of operations of the defendant.  And then said, you know, this is enough, and I guess that's for us to determine whether that is going to be sufficient. But, again, this is at the motion for summary judgment stage, and I'm just trying to understand, especially if we do entertain adopting these factors and the approach of these other circuits, how you have met that burden. Well, if we're required to do all the architectural plans, drawings, get all their finances, and so forth, we have definitely not met that burden. And that's our argument is that a plaintiff shouldn't have to do that. The Molsky Court said a plaintiff shouldn't have to do that. The business has the best access to the information. They know about the nature of their business. I mean, all the rationale applies so easily. But this is what you're saying. This would allow you to win at summary judgment. And you're saying that someone can go in and do the camera, say the pin is too big, and that should be enough for you to win at summary judgment? Not at all. That's my question for you. Not at all, Your Honor. The defense then comes back and says, yeah, it seems like it's readily achievable. Here's why it's not. And then they have the burden to carry out their affirmative defense. In fact, every court agrees that they have the ultimate burden. This is their affirmative defense. Counsel, that's Judge McHugh's point, I think. Even if we were to construe Colorado Cross in the way that I suggested earlier, which is the plaintiff does have an initial burden, but isn't very great to show what the disability is and make the assertion about what accommodation you think is necessary in order to make this what is readily achievable. Burden shifts the defendant at step two, and this is summary judgment. And at step two, I think what I understand Judge McHugh to be suggesting is they've met their burden to show that it's not readily achievable, and you haven't refuted that. You haven't raised a materialistic fact about that. Right. I don't think they've met their burden. They didn't produce any information about their finances. They didn't produce any information. They said that widening it may require structural change, which may add additional weight, which may result in a safety violation. There is no information. And this was sprung in a supplemental declaration in summary judgment. And so the thing is that we know that this is their burden. Again, the language is identical to the undue hardship burden. Look at the employment cases. So your point is whether or not we have this pleading obligation is irrelevant because we're in the summary judgment stage. Everyone knows that the burden of persuasion is on the part of the defendant. They failed in their burden as a matter of law. Therefore, we should win. Yes, that they have on a summary judgment under Rule 56 that the party who's asserting an affirmative defense has the burden of demonstrating that there's no genuine issue or material fact, has to marshal the evidence, has the burden of production and persuasion in that setting. So I can understand our motion was denied. The court says your motion, your cross-motion, wasn't sufficient. But their motion could be granted. They have the burden, clearly, of demonstrating that there's no tribal issue. We have an investigator who says all you have to do is remove a pin and widen it. He's already come up with the accommodation. Sort of. Your assertion is that all that has to happen is the pin gets removed. The burden, I think, in this, at least hypothetically, I understand that the burden then shifted because this is an affirmative defense, as you said. Everybody, the case law is very clear about that. And what they've said in response is this is not just a pin, it's a door handle, and you get into stability of the vessel, issues concerning stability of the vessel. Is your response, and your time is ticking, but does your response boil down to that you consider their proof to be too speculative? That is a response. But my primary thrust that I'd like the court to consider is that that Colorado cross is borrowing an employment burden-shifting context. And while it makes sense for a plaintiff to have initial burden to say, this is what I want done, it does not make sense. And the reason why is because businesses who are in the employment setting, they are operating in full integrity. They're not violating any standards. No duty arises until someone says, hey, I need you to change your lawful operation to accommodate me. That's not true in a barrier case. Both the problem and the answers already exist in the codebook. If you don't have parking – Not for a ferry they don't, right? That was in the briefing. What's that? Okay, but I agree. We're over time, but I'll give you a minute or two to respond. If we could go on to hear counsel for Catalina Channel. Good day, Your Honors. May it please the court, Douglas Coladello, appearing on behalf of Catalina Island Express. What Mr. Handy is calling upon this court to do today is create a conflict with every other circuit that has addressed the issue as to who has the burden of production in cases involving readily achievable barrier removals under the ADA. Claims proposal is unnecessary and unwarranted. And the burden-shifting approach implemented by the second, eighth, tenth, and eleventh circuits, albeit slightly different under the different circuits scenarios and rules, maintain that the plaintiff has the initial burden of production. And that makes sense. Why must the plaintiff have that initial burden? It's the plaintiff who is claiming that a particular. Is it your point that the pleading, the complaint is sufficient, and therefore the complaint should be dismissed even though it's a Rule 56 motion? Well, I think we're here at the Rule 56 stage where, even though he pled sufficiently to get to the summary judgment stage, the case falters when the evidence defeats the allegations made in the complaint. And that's because he has not brought forth enough evidence to show that it is readily achievable? Is that why? In part, Your Honor, yes. And even if you look at the cases that address default judgments, when a defendant doesn't make any response and the plaintiff goes into court based essentially on the allegations in the complaint, there is some component in order to get a default judgment that incorporates the readily achievable aspect under the ADA. And so, again, that militates in favor of finding that the plaintiff has the initial burden of production. Let's say you've given no proofs of whatever. Should you still win? I'm sorry, if the plaintiff has... You came forward with no proofs whatever. Should you still win? If the state of the record is as it is with plaintiff, where the only thing that plaintiff has in support of his claim is an investigator who took a couple of pictures and said... Your answer is yes. Your answer is yes. Yes, under the state of the record here. There was not sufficient evidence for plaintiff to succeed on the merits. Well, what should the plaintiff have to show? This is going back to the Colorado Cross because I think that is... I appreciate that this case is at summary judgment, but we're being asked to adopt the Colorado Cross standard. And the Colorado Cross... And we haven't really spoken to this. I'm trying to figure out what it is you think the plaintiff should have to show at that initial stage. The nature of the disability, right? What the barrier is, what the problem is, but how far does the plaintiff have to go? I think, Your Honor, again, when I opened, we noted that there were different gradations in what courts have said about the initial production. Certainly, Colorado Cross has a very stringent test where the plaintiff is obligated to get a design with specifics to obtain information about the cost-benefit relationship. And that is the one extreme. Perhaps a more accommodating burden of production is that found by the Second Circuit where a plaintiff would have to provide some plausible plan for the barrier removal and have a facially cost-effective way to do that. And at that point, then the burden would shift to the defendant to show the other factors set forth under 42 U.S.C. 12181. Your theory would have required this plaintiff who could get into the bathroom to come up with some kind of an expert who would have been given access by the steamship company, by the ferry company, to go and measure its bathroom and examine all the plans and the engineering and then come up with some kind of a palliative? Well, certainly during the discovery phase, you know, an expert... How about at the pleading stage? So that's really what you're talking about, who has the burden of presentation. We're talking about a pleading. What is the pleading requirement? I think the pleading requirement requires that there's some short plain statement showing the factors under the ADA that the plaintiff is seeking. And one of them would be that the accommodation is readily achievable. When you get to the summary judgment or evidentiary phase of the case... How does the plaintiff allege that it's readily achievable? That's at least I think the question that Judge Christen had and I have. Well, I think if you're going to place that burden at the pleading stage, then it becomes difficult for the plaintiff to plead it, that you have a particular... That means he never can get into court? Well, they did get to court here. I mean, that was pled. But under this theory, yes, but under this theory that the defendant has a demur or a motion to dismiss, it should have been successful because there's no allegation of readily achievable that's plausible. But in this case, depending on, you know, if we were to adopt the second circuit, for example, and I really appreciate your candor, Colorado Cross is not applied as a monolith. There's different standards in the question. This is for me where the rubber meets the road. How much does the plaintiff have to do? And surely it's something because there are a lot of idiosyncratic disabilities out there, different needs and whatnot. And I recognize that there are some building standards, and the ferry is a perfect example of where there isn't one, right? So this plaintiff comes forward and says he has a problem and he couldn't use the restroom facility, and his allegation is I only needed to take a pin out, right? And it I'm not so sure that doesn't satisfy his burden. But when we get to the next step, of course, then you have this. That's a totally different question you have because he's done. He's done very little here. But but in to play devil's advocate, the reason I think he's doing very little is he's only alleging what he thinks is this. This pin just has to be removed. So, you know, no problem. Your response, of course, was, well, there's vessel stability problems and there's a problem with pinching fingers and there's much more to it. But to get back to Judge Hellerstein's question, I'm not sure that I really hear you disputing that the plaintiff showing here at the pleading. Yeah, the pleading stage was really inadequate. I don't think you get to the the burden shifting analysis until you get to an evidentiary aspect of the case. So that the pleading, the pleading says it's a readily achievable accommodation that can be made. And then it's incumbent upon the parties to conduct discovery and proceed either to a summary judgment or trial on the issue of readily achievable. And in this case, Judge Pearson, I have to disagree with you about the evidence that the plaintiff has. Certainly, certainly it's I'm sorry. Before you get that far, if you take one half step backwards so we can just put the close the lid on this question in terms of I don't I think you would agree. The plaintiff can't just allege it's readily achievable. Right. Because then you have a problem. But in this case, the facts alleged are, well, there's just a pin. You can just remove the pin. So just to make sure that that's my hypothetical. OK. So I don't think it's enough. And I didn't mean to suggest it's enough for them to just allege without factual support that that standard is met in terms of readily. And I don't hear you disagreeing. Is that right? That's correct. OK, so then you were saying when you get to the burden shifting. Then you need to have the proponent of the claim of a need for an accommodation to say, well, this is what I need in order for me to be able to have the use and enjoyment in this particular case of the Catalina Express ferry, including the bathroom, which is preventing me from having my particular use and enjoyment of the facility. And here's what I suggest. In this case, they may say, OK, I'll remove. I suggest removing the pin. It's a relatively easy fix to do. We don't see any problems once the pin is removed. Now, the declaration of the expert in this case doesn't even say that. It doesn't say anything other than the door would open more if you remove the pin because the expert, plaintiff's expert, didn't take into account. What happens if you just remove the pin? Does the door flop back and forth? Does it create other issues? So I think the plaintiff would have to make a plausible accommodation suggestion and plan and design. And that would include an expert saying, OK, if you remove the pin, the door will open more and it will not cause any other problems or need to do X. And then the burden would shift to the defendant, in this case Catalina Express, to say, well, not so, because you run into all these other safety factors or other reasons why this cannot be a reasonable accommodation and it's not readily achievable. And put in evidence showing its burden of persuasion that, in fact, the proposed plan is not readily achievable. And so there you have a situation that the plaintiff says, here's the problem, here's my suggested fix, it would accommodate me. And that would satisfy the burden of production. And otherwise, you would get into a situation where, for instance, the plaintiff just says, there's a problem here, fix it. And say Catalina Express then comes back and says, OK, well, we'll try to fix the door by moving the handle. Now, that's not really a readily achievable methodology because it runs into all sorts of safety issues. Given the fact that the boat moves, you know, there's a lot of passengers, there's different types of injuries associated with it. But this is what we're suggesting be done. And then the plaintiff comes back and says, oh, no, you don't need to move the handle, you need to move the pin. And then we get back to exactly where we are now, which is the plaintiff has made a suggested accommodation for which the defense then has to respond and show why, under its burden of persuasion, that would not work. What was it that you have to show? I'm sorry, Your Honor? What was it that you had to show? Merely that the pin won't do the job? Or do you have to show more than that? Well, initially, if you accept the fact that simply saying the pin, removing the pin opens the door, satisfies the burden of production. Then we get to the point of saying, okay, if you do any accommodations to that door, you run into safety issues, which is what our expert said. And then if you start making wider or more global changes to the door itself, then you run into changing the weight of the boat and running into different safety issues based on that. Just so I understand, so you're saying that what we showed was that removing the pin wouldn't be enough, that there'd be more, there'd have to be some structural changes. And when you have structural changes in a boat, all kinds of dynamics flow from that that would be just too complicated to deal with, and you don't want to endanger the boat. And that's your case, and you won. Correct. And we should affirm. Absolutely. And Your Honor, the other point about the pin is that the pin, there's no tying it to the accessible bathroom door. In fact, there's evidence, undisputed evidence, that shows that the pin is not associated with the accessible door, but something else that was not authenticated and tied to the accessible door by the investigator. Rather, if you look at the pictures, the accessible door, the paint to the bathroom in that location is red, and it's clear that the door with the pin is not a sliding door with the red paint in the accessible bathroom. So factually, the basis for the claim that the pin removal is all that's needed to satisfy plaintiff's burden of proof is inaccurate. So that's why Judge Wilson in this case noted that plaintiff had not even reached his first burden of production. Can I ask you, before your time is up, talk to me about alternative methods. In your view, we probably don't reach that, but if we did, can you just tell me your position regarding alternative methods? In what regard, Your Honor? I'm not sure I understand your question there. I mean, did your client provide alternative methods to make the handicapped restroom aboard, you know, the JetCat Express more available to locusts? I'm sorry, Your Honor. There were two wheelchairs on board that were available for use by handicapped individuals, and those wheelchairs would have fit through that particular door. The plaintiff in this case did not request the use of the other methodology and also indicated that if the individual employees of Catalina Express were going to try to help him get onto the toilet, that that wouldn't have been an acceptable accommodation because of his weight and prior experiences. Judge McGill, can I ask one more? Yes. Thank you. Just quickly, counsel, I genuinely appreciate that you recognize and acknowledge that there's this bandwidth between the various circuits and exactly how they apply Colorado Cross. I think that's where I agree with you. If we, opposing counsel says that Colorado Cross is quite extreme, I think you might have even used that word, and he advocates that we look to the Second Circuit's version of that test, burden-shifting test. What circuit law do you think we should consider? I, well, again, depending on how far along... Hypothetical. If the hypothetical is that I think Colorado Cross is quite extreme, too, then what do you think about the other circuits? I think it's a sliding scale, and the most, I guess, accommodating one would be the Second Circuit's approach. I think the Eleventh Circuit is lockstep with Colorado Cross, and the Eighth Circuit may be kind of in between. I'd have to kind of do a deep dive into the Eighth Circuit district court cases to see how they actually apply it, but I think the Second Circuit is a sensible approach. It puts the initial burden of production on the plaintiff to provide some kind of a plausible plan that, at least facially, is cost-effective, and that information can be obtained during the discovery process. Okay. Thank you so much, and thank you, Judge Marquand. Yes. All right. Thank you. Mr. Pandey? Yes, I just have a quick question. You have two minutes. Three quick points. One is, counsel said that the plaintiff should at least show some sort of facially cost-effective manner that should be part of his burden. The problem with that is that there is no such thing as a facially cost-effective manner. All the case law, the Department of Justice, everything says there's no ceiling, and it all depends on the financial resources of the business. In other words, a mom-and-pop can only do so much. If we're talking about Microsoft, if it's at Microsoft's facilities or their store, they can do a heck of a lot more. What's readily achievable for them is going to be tremendous. So there's no such thing as something that's presumptively cost-effective because it's all relative to the resources of the business, and we have no way of knowing what that is. Second of all, Judge Kristen said that a lot of individual needs from plaintiffs are kind of idiosyncratic, and that's why it's tough to know what would work for them. But see, this is the big problem. That's true in the employment context. That's absolutely true in the employment context, and it underlies why there's that burden shifting. But remember, in the barrier context, it's not true. It doesn't matter what your particular needs are other than, you know, I'm a wheelchair user. Counsel, I just have to respond. You've done that two or three times. You've said that, but in this particular case, I appreciate that. You know, we're talking about other types of facilities, but there aren't regs for this type of vessel. If you're going to follow that rule, then they wouldn't be held to any standard in your ADA context. I can't imagine why you would advocate for that. No, there are regulations, Your Honor. Remember, we talked about this in our briefing. Even though vessels themselves are not covered, individual components on the vessel can be covered, and there are regulations for restrooms. And so anyway, the Chapman court says these are objective standards. If you comply with these objective standards, you don't have to worry about what anyone else says. If someone has a super wide wheelchair, sorry, they're out of luck. This is the objective standard. Finally, last point, you don't just affirm, even if we didn't get it right. Because remember, they say they have these other wheelchairs. The factual records will be clear. They never offered it to a client. He said he never asked for it. How would he know to ask for alternative wheelchairs? He has no idea. The evidence is clear. They did not make that available to him. And so that right there should preclude, because the statute is very clear. It says if a business can demonstrate that it's not readily achievable to remove barriers, then they still have a duty to provide an alternative method. They didn't provide one. They didn't offer one. That's part of our grievance. Did you explore that on discovery? No, we didn't ask about alternative accommodations. But that statute clearly says that's their burden. There's not even a question about that. And they didn't make it available. It's not a matter if they have it or they can come up with something. They've already come up with something. They just never made it available. And so I don't see how we can win on summary judgment. Thank you. Unless Judge Hellerstein or Judge Christen have any other questions, I think we're done. Thank you both for your oral argument presentations. Judge Christen, do you have anything else? No, I'm fine. Thank you. Thank you, Your Honors. Thank you very much for your oral argument presentations. The case of Lopez v. Catalina Channel Express is now submitted.
judges: Murguia, Christen, Hellerstein